UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL GABRIELE | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-38 (JCH) |
| v. | : | |
| CAESAR SANZARO and TRIBECA STONEWORKS, | : | JULY 19, 2010 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 7)**

**I.    INTRODUCTION**

Plaintiff, Daniel Gabriele ("Gabriele"), brings this action against defendants, Tribeca Stoneworks ("Tribeca") and Caesar Sanzaro ("Sanzaro"), Tribeca's president and owner, for damages for injuries he allegedly sustained as a result of the defendants' breach of contract and unlawful activity. Gabriele asserts a common law breach of contract claim as well as a claim under the Connecticut Unfair Trade Practices Act ("CUTPA") against Tribeca, and he alleges that Sanzaro controls Tribeca such that the court should pierce the corporate veil in order to hold Sanzaro liable.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move the court to dismiss all but one claim.[1] First, they ask the court to find Gabriele's pleading insufficient to support a claim that Sanzaro controls Tribeca, thus requiring a dismissal of all claims against Sanzaro. Next they ask the court to dismiss Gabriele's claims under CUTPA for failure to state a claim. For the following reasons, the court grants defendants' Motion to Dismiss.

---

[1] Defendants do not seek to dismiss plaintiff's breach of contract claim against Tribeca.

1

## II. FACTUAL BACKGROUND

On or about February 1, 2008, Gabriele entered into a contract with Tribeca to manufacture and deliver various pieces of stone to his home in Greenwich, CT. See id. at ¶¶ 7-8. These stones were intended to be used for "window surrounds, sills, door trim, chimneys and roof coping," pursuant to plans drawn up between Gabriele and Tribeca Id. The total price for the job was to be $219,509.40, payable in installments. See id. at ¶¶ 9-11. Gabriele has paid to Tribeca $210,728.64 (approximately ninety-six percent of the total price). See id. at ¶ 10.

Tribeca agreed to deliver all of the stones to Gabriele by June 2008. See id. at ¶ 11. However, as of June, none of the material had been delivered. See id. at ¶ 12. After June, some of the stones were delivered; however, many of them were "either useless or had to be completely re-cut." Id. at ¶ 13. In total, only approximately twenty-five percent of the materials delivered as of the filing of the Complaint on January 7, 2010, were usable. See id. at ¶ 14.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations of the complaint as true and construes them in a manner favorable to the plaintiff. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

The court begins its analysis by "'identifying pleadings that, because they are no more than conclusions, are not entitled to the assumptions of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Next, the court must "determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement of relief.'" Hayden, 594 F.3d at 161 (quoting Iqbal, 129 S. Ct. at 1950). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.

## IV. DISCUSSION

### A. Claims Against Sanzaro

In order to allege that Sanzaro is liable for the actions of Tribeca, Gabriele alleges that "there is such an identity of interest between and among Tribeca and Sanzaro that the corporate veil should be pierced." Comp. at ¶ 19. Under Connecticut law,[2] there are two tests for "pierc[ing] the shield of immunity afforded by the corporate structure": the instrumentality rule and the identity rule. Naples v. Keystone Bldg. & Dev. Corp., 295 Conn. 214, 231 (2010).

---

[2] The defendants cite exclusively to Connecticut law in their Motion to Dismiss, which is uncontested by the plaintiff in his Opposition (Doc. No. 29). However, the court notes that it would probably be more appropriate to apply New York law to the piercing of the corporate veil analysis, given that Tribeca is alleged to be a New York corporation. See Sovereign Bank v. ACG II, LLC, No. 08cv1600, 2010 WL 363336, at *5 (D. Conn. Jan. 25, 2010); Weber v. U.S. Sterling Sec., Inc., 282 Conn. 722, 730 (2007). However, the court will not examine this issue sua sponte, but notes that, given the lack of specificity in plaintiff's complaint, the analysis, infra, would be substantially the same under the New York standard. See Yves Saint Laurent Parfums, S.A.. v. Costco Wholesaler Corp., No. 07 Civ. 3214, 2010 WL 2593671, at *4 (S.D.N.Y. June 24, 2010) (laying out the New York corporate veil piercing standard).

The instrumentality rule requires proof (1) of control—"not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own"; (2) that the control was used to commit some wrong; and (3) that the control and breach of duty proximately caused the injury complained of. Id. at 232. The identity rule permits the piercing of the corporate veil where "there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun." Id.

While Gabriele's Complaint alleges all of the elements of the above tests, his conclusory statements plainly fail the Rule 12(b)(6) standard. Gabriele avers that "Sanzaro controls and dominates the finances, policy and business practices of Tribeca with respect to the transaction at issue, such that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." Comp. at ¶ 20. A comparison between this paragraph of the Complaint and the first prong of the instrumentality rule makes it clear that this is a "[t]hreadbare recital[]" of the Connecticut corporate veil piercing standard. See Harris, 572 F.3d at 72. The subsequent paragraphs likewise march through the second and third elements of the instrumentality rule without any supporting facts. See Comp. at ¶¶ 21-22. And, in paragraph nineteen, Gabriele makes a similar gesture toward the identity rule. See id. at ¶ 19 ("[T]here is . . . an identity of interest between and among Tribeca and Sanzaro . . . ."). Absent factual allegations, these claims cannot be granted the usual assumption of truth, and the court cannot conclude that Gabriele has a plausible claim against Sanzaro on the basis of a corporate veil piercing.

Gabriele's Complaint might be read to include claims against Sanzaro that are not dependant on a successful claim of corporate veil piercing. For example, in Count One, Gabriele claims that "Tribeca and Sanzaro breached the agreement," id. at ¶ 12, and in Count Three, Gabriele asserts that, "The conduct of Tribeca and Sanzaro alleged herein constitutes a violates of [CUTPA]," id. at ¶ 26; see also id. at ¶¶ 27-28. However, nowhere in the Complaint does Gabriele allege that Sanzaro took any action at all, either independent of Tribeca or as its president and owner. Gabriele cannot be said to have alleged a breach of an agreement, where no agreement between himself and Sanzaro was alleged. See Rosenfield v. I. David Marder & Assocs., LLC, 110 Conn. App. 679, 686 n.5 (2008) ("The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."). Similarly, Gabriele cannot be said to have alleged that Sanzaro's conduct was in violation of CUTPA where no conduct of Sanzaro was alleged. See Conn. Gen. Stat. § 42-110b(a) ("No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."). Therefore, all claims directed against Sanzaro are dismissed under Rule 12(b)(6) for failure to state a claim.

B. CUTPA Claim Against Tribeca

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-11b(a). In order to identify whether a practice is "unfair," Connecticut courts look to "(1) [w]hether the practice . . . offends public policy as it has been established by statutes, the common law, or otherwise . . . ; (2) whether it is

5

immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc., 296 Conn. 315, 350 (2010). While "[a]ll three criteria do not need to be satisfied to support a finding of unfairness," id., it is clear that "not every contractual breach rises to the level of a CUTPA violation." Naples, 295 Conn. at 228.

This court has raised some doubts previously as to what, if any, additional facts must be asserted to maintain a CUTPA claim above and beyond a properly alleged breach of contract claim. See CUSA, LLC v. Travelers, Co., Civil No. 3:07-cv-00968, 2007 WL 3046270, at *3 (D. Conn. Oct. 15, 2007). Recent Connecticut Supreme Court decisions suggest that more is needed than a mere breach of contract claim, see Naples, 295 Conn. at 228; Am. Progressive Life & Health Ins. Co. of N.Y. v. Better Benefits, LLC, 292 Conn. 111, 117, 124 (2009) (appearing to accept the lower court's conclusion that the alleging of a "simple breach of contract" does not state a claim under CUTPA). The Second Circuit has held that, "to pursue a CUTPA claim, [plaintiff] must demonstrate aggravating circumstances beyond a simple breach contract claim." Omni Corp. v. Sonitrol Corp., 303 F. App'x 908, 910 (2d Cir. 2008). Indeed, a plaintiff must allege "how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy." Boulevard Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1039 (2d Cir. 1995). Based on this precedent, the court concludes that Gabriele's pleading fails to state a cause of action under CUTPA because it alleges nothing more than a breach of contract.

As with his piercing the corporate veil allegations, Gabriele has failed to allege facts sufficient to support his CUTPA claim. Rather, he simply states that Tribeca's and

Sanzaro's conduct "offends public policy"; "violates established concepts of fairness"; and, "constitutes unfair and deceptive practices and/or practices which are illegal, immoral, unethical, oppressive and/or unscrupulous." Comp. at ¶¶ 26-28. As before, Gabriele does not include any factual allegations to support his conclusory assertions and merely "incorporates by reference the breach of contract claim." See Boulevard Assocs., 72 F.3d at 1039. Gabriele has therefore failed to state a claim for relief under CUTPA.

**V. CONCLUSION**

For the foregoing reasons, the court grants the defendants' Motion to Dismiss (Doc. No. 7). However, if Gabriele has a factual basis to do so, he may replead, no later than August 9, 2010.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 19th day of July, 2010.

                                                /s/ Janet C. Hall
                                                Janet C. Hall
                                                United States District Judge